275 So.2d 46 (1973)
FEDERATED DEPT. STORES, INC., D/B/a Burdine's Appellant,
v.
Charles PASCO et al., Appellees.
SEARS, ROEBUCK AND CO., Appellant,
v.
William M. HICKS et al., Appellees.
CITY STORES CO., D/B/a Richards, Appellant,
v.
Ann UNGER et al., Appellees.
BYRONS DEPARTMENT STORE, INC., D/B/a Jackson Byrons, Inc., Appellant,
v.
Ann BROCKINGTON et al., Appellees.
JORDAN MARSH COMPANY, a Florida Corporation, Appellant,
v.
Shirley R. WILLIAMS et al., Appellees.
The FIRESTONE TIRE AND RUBBER COMPANY, Appellant,
v.
Alberto PEREZ, Appellee.
Nos. 72-491, 72-495, 72-492, 72-496, 72-493, 72-497, 72-494, 72-509, 72-503, 72-506, 72-525.
District Court of Appeal of Florida, Third District.
March 20, 1973.
*47 Mershon, Sawyer, Johnston, Dunwody & Cole and Woodrow M. Melvin, Jr. and George W. Wright, Jr., Miami, for Sears, Roebuck & Co., Federated Department Stores, d/b/a Burdine's and City Stores Co., d/b/a Richards.
Adams, George & Wood, Miami, Shackleford, Farrior, Stallings & Evans, Tampa, for Byrons Department Stores.
McCarthy, Steel, Hector & Davis, Miami, for Jordan Marsh Co.
Preddy, Haddad, Kutner & Hardy, Horton, Schwartz & Perse, Miami, for Firestone Tire and Rubber Co.
Colson & Hicks, Podhurst, Orseck & Parks, Miami, for appellees.
Before PEARSON, CHARLES CARROLL and HENDRY, JJ.
PEARSON, Judge.
These consolidated interlocutory appeals and petitions for certiorari are brought by the defendants. They seek review of the orders of the trial court which denied the defendants' motions to dismiss plaintiffs' complaints and the orders denying defendants' motions for summary judgment. The common questions presented are: (1) Did the trial court err in holding that plaintiffs' suits were properly brought as class actions? (2) Is the "previous balance" method of computing finance charges on "revolving charge accounts" permitted by Fla. Stat. § 520.35, F.S.A.?[1] We think that it is necessary to answer both questions in order to expedite future litigation on the subject. We hold, (1) that the motions to dismiss were erroneously denied because the instant suits do not qualify as class actions, and (2) that the motions to dismiss were erroneously denied because the "previous balance" method of computing finance charges on "revolving charge accounts" is not prohibited by the statute.
*48 Class actions are permitted in Florida under Rule 1.220, RCP, 30 F.S.A.[2] The appellees describe the class which they desire to represent as follows:
"The instant class of plaintiffs is comprised of all those persons who have been extended credit by the defendant stores and have been assessed and paid finance charges on the Previous Balance Method."
The appellees contend that the courts of this state have consistently held that the rule allowing class actions is applicable to situations where there is a "single legal question" which will determine liability. Although this assertion is not inaccurate, it is merely the initial stepping stone in considering whether a class action may be initiated. In this connection, the appellees properly cite the case of Port Royal, Inc. v. Conboy, Fla.App. 1963, 154 So.2d 734, as more fully determining the principles to be evaluated in ascertaining whether a class action may be maintained. In the Port Royal case, the court stated:
* * * * * *
"It is fundamental that an action is not a class suit merely because the plaintiff designates it as such in the complaint and uses the language of the rule. Whether it is or is not a class suit depends upon the circumstances surrounding the case. However, the complaint should allege facts showing the necessity for bringing the action as a class suit and the plaintiff's right to represent the class. The plaintiff should allege that he brings the suit on behalf of himself and others similarly situated. The complaint should allege the existence of a class, described with some degree of certainty, and that the members of the class are so numerous as to make it impracticable to bring them all before the court. It should be made clear that the plaintiff adequately represents the class, and whether a party adequately represents the persons on whose behalf he sues depends on the facts of the particular case. Generally, the interest of the plaintiff must be co-extensive with the interest of the other members of the class. A class suit is maintainable where the subject of the action presents a question of common or general interest, and where all members of the class have a similar interest in obtaining the relief sought. The common or general interest must be in the object of the action, in the result sought to be accomplished in the proceedings, or in the question involved in the action. There must be a common right of recovery based on the same essential facts." [Emphasis supplied.]
At this juncture, it should be noted that the members of appellees' proposed class all possess separate and individual contracts with the appellants. It appears to us that the leading case in Florida concerning the principles for maintaining a class action in a suit based upon separate contracts is Osceola Groves, Inc. v. Wiley, Fla. 1955, 78 So.2d 700. In the Osceola case, a purported class action was commenced to recover monies due under sale and lease-back agreements. It was alleged that many such sale and lease-back agreements, all virtually identical, had been executed between the defendant and a large class of persons upon whose behalf the plaintiffs brought the action. The court held that the suit could not be entertained as a class action and stated:
"In the instant case we note particularly that each of the alleged numerous purchasers of units of land acquired his interest under separate contracts with the defendant and it does not appear that in these contracts was any provision showing a cooperative enterprise or any showing that any purchaser had a pecuniary *49 interest in any development of lands other than those covered by his own contract. Further, the complaint shows that other alleged purchasers, if they have any cause of action against defendants, have a choice of remedies available to their individual selection and their rights of actions may be subject to separate and distinct defenses.
* * * * * *
"We fail to find any community of interest between the two plaintiffs in this suit and no common ground upon which they can join in building a single action on behalf of themselves and upon all other purchasers of units from defendant corporation." [Emphasis supplied.]
See Wilson v. First National Bank of Miami Springs, Fla.App. 1971, 254 So.2d 362.
The appellants point out, and we agree, that despite the allegations of the appellees' complaint, it is clear that the appellants offer separate and individual contracts to their customers according to the terms of which purchases charged against the customers' accounts are financed in consideration of the payment of interest on the balance. According to appellants' reasoning, such a "previous balance" charge customer is permitted to manage his account as he chooses. He can use the account as an interest-free charge account by promptly paying each month's outstanding balance, or if the customer elects not to pay his outstanding balance in full, he may instead make the minimum monthly payment prescribed by his agreement and take advantage of the installment feature of the revolving account. According to the appellants, each customer's interest in this suit depends upon his payment habits under his individual contract. In fact, some may have no interest at all, because they have promptly paid their accounts and have thus avoided any finance charges, while others may desire to continue their present contracts simply because they find them a useful source of credit not otherwise available.
Where a plaintiff asserts the right to litigate on behalf of a class of persons not joined with him in the action, the trial court is obliged to make a determination at an early stage of the trial as to whether the suit can properly proceed as a class action. Osceola Groves, Inc. v. Wiley, supra. In determining whether a class action may proceed, the trial court must not only confirm that the parties named actually represent the class, but must clearly demonstrate that the class encompasses the necessary community of interest. Watnick v. Florida Commercial Banks, Inc., Fla.App. 1973, 3rd D.C.A., 275 So.2d 278, filed March 20, 1973. See Osceola Groves, Inc. v. Wiley, supra; Ross v. Gerung, Fla. 1954, 69 So.2d 650. Once the trial court establishes that the necessary community of interest exists, the interest fuses all members of the class together, and assuming further that the question to be litigated is a valid subject under Rule 1.220, the class members are made parties to the litigation involuntarily, and will be bound by whatever results may follow regardless of their separate or individual wishes. Indeed, the resulting judgment is res judicata upon the rights of the entire class despite their lack of participation in, or perhaps even knowledge of, the proceedings. Osceola Groves, Inc. v. Wiley, supra; City of Lakeland v. Chase Nat. Co., 159 Fla. 783, 32 So.2d 833 (1947); Tenney v. City of Miami Beach, 152 Fla. 126, 11 So.2d 188 (1942).
If the instant case proceeds as a class action the court will be faced with the realities of an impossibly complex case. The court will have to separately analyze hundreds of thousands of separate, individual revolving charge accounts to determine whether the interest received by defendants was greater than that permitted. This sort of virtually insurmountable accounting problem produces the type of complexity which renders a class action the least rather than the most expeditious method of handling the claims of different customers. Cf. Hackett v. General Host Corporation, *50 455 F.2d 618 (3d Cir.1972); Schaffner v. Chemical Bank, 339 F. Supp. 329 (S.D.N.Y. 1972).
The requirement of a precise community of interest is necessary under any concept of fairness and due process because all members of the class represented are bound by the judgment in the case whether or not they actually participate. We hold that the appellees do not qualify as the representatives of a class entitled to maintain these actions. Osceola Groves, Inc. v. Wiley, supra; City of Lakeland v. Chase Nat. Co., supra; Tenney v. City of Miami Beach, supra; Wilson v. First National Bank of Miami Springs, supra. See Daniels v. National Brands Tire Co., Inc., Fla. App. 1972, 270 So.2d 448; Society Milion Athena, Inc. v. National Bank of Greece, 281 N.Y. 282, 22 N.E.2d 374 (1939).
We turn now to the second question presented: Is the "previous balance" method of computing finance charges on "revolving charge accounts" permitted by Fla. Stat. § 520.35, F.S.A.? The appellants have defined the "previous balance" method as follows:
"... the `previous balance,' i.e., the ending (or `new') balance at the close of the previous billing cycle, which is carried forward and is the same as the beginning balance in the current billing cycle. While partial payments and credits during the current billing cycle are not deducted from the previous balance, neither are purchases made by the customer during the current billing cycle added to the previous balance before computing the finance charge. A finance charge is not imposed at all if the full amount of the previous balance is offset by credits and/or payments during the current billing cycle."
The appellees have defined the term:
"Under the PREVIOUS BALANCE METHOD a finance charge of one and one-half percent computed on a dollar amount which does not include payments and credits during the current billing cycle."
For the purposes of this opinion we will combine the two as follows:
Previous balance method is that method by which the amount of time-price differential (or finance charge) for any monthly billing cycle is derived by multiplying the previous month's balance (which does not include the current month's purchases and credits) by the monthly rate. However, if the previous month's ending balance is offset during the current period by payments and other credits, no time-price differential is charged.
A "revolving account" is defined by Fla. Stat. § 520.31, F.S.A., as follows:
"(8) `Revolving account' or `account' means an instrument or instruments prescribing the terms of retail installment transactions which may be made thereafter from time to time pursuant thereto, under which the buyer's total unpaid balance thereunder, whenever incurred, is payable in installments over a period of time and under the terms of which a finance charge is to be computed in relation to the buyer's unpaid balance from time to time."
The pertinent portions of the Florida Retail Installment Sales Act, Fla. Stat. § 520.35, F.S.A., upon which we must judge the legality of the "previous balance" method are:
"(1) * * * All accounts executed on or after January 1, 1960, shall state the amount of, or the method of calculating, the finance charge to be charged and paid pursuant thereto or shall state that a finance charge not in excess of that permitted by this law will be charged and paid pursuant to such account.
"(2) The retail seller under a revolving account shall promptly supply the retail buyer thereunder with a statement as of *51 the end of each monthly period (which need not be a calendar month), or other regular period agreed upon by the retail seller and the retail buyer, in which there is any unpaid balance thereunder, which shall recite the following: "(a) The unpaid balance under the account at the beginning and end of the period using the terms `previous balance' and `new balance';
* * * * * *
"(3) Notwithstanding the provisions of any other law, the seller under a revolving account may charge, receive, and collect, a finance charge which shall not exceed fifteen cents per ten dollars per month, computed on all amounts unpaid thereunder from month to month (which need not be a calendar month) or other regular period; however, if the amount of the finance charge so computed shall be less than one dollar for any such month, a finance charge of one dollar for any such month may be charged, received, and collected. If the regular period is other than such monthly period or if the unpaid amount is less than or greater than five dollars, the permitted finance charge shall be computed proportionately. Such finance charge may be computed for all unpaid balances within a range of not in excess of ten dollars on the basis of the median amount within such range, if as so computed such finance charge is applied to all unpaid balances within such range."
The Florida legislature framed the permissible finance charge in terms of a nominal rate and directed that the rate should be applied to the "unpaid balance" in the customer's account on a particular day each month. The "previous balance" method which represents the unpaid balance in the customer's account on the opening day of the billing (which is the day the finance charge starts) does not represent a violation of the express terms of the statute.
The determinative words seem to be "computed on all amounts unpaid thereunder from month to month (which need not be a calendar month) or other regular period ...". We find no reason to hold that the words in the above quotation "all amounts unpaid thereunder from month to month" compel the use of the balance at the end of the period rather than the amount at the beginning of the period. The "unpaid balance" in the customer's account at the beginning of the cycle, the "unpaid balance" at the close of the cycle, or the average "unpaid balance" are all encompassed by the statute.
It may well be that calculating an average daily balance and applying the permitted interest rate to this figure would be, as the appellees suggest, a fairer way of applying the permitted interest rate. We are informed by the appellees that many revolving charge accounts are now handled on the basis of the average daily balance. Nevertheless, we do not think that public policy calls for legislation by the courts in this area. Such matters are constantly under review by the legislature and a change could be made by the legislature without the inefficiency and expense attendant upon a kind of ex post facto determination that only a particular type of method is allowable under the act.
We therefore hold that the "previous balance" method of determining the finance charge on a revolving charge account is not contrary to Florida law.[3]
*52 Having determined that there were two separate grounds upon which appellants' motions to dismiss the complaints should have been granted, and having determined that the complaints cannot be amended to state a cause of action because of our holding that the "previous balance" method is not contrary to the law of this State, we reverse the orders denying appellants' motions to dismiss the complaints and these causes are remanded to the trial court with directions to enter final judgments dismissing the complaints with prejudice.
Reversed and remanded with directions.
NOTES
[1] The second question is stated by the appellees as follows:

"Whether the computation of finance charges on a dollar balance which includes prior payments results in a finance charge in excess of the maximum charge permitted by the Retail Installment Sales Act."
[2] "Rule 1.220. Class Actions

"When the question is one of common or general interest to many persons constituting a class so numerous as to make it impracticable to bring them all before the court, one or more may sue or defend for the whole."
[3] In a case based on a closely analogous factual situation, Zachary v. R.H. Macy & Co., Inc., 39 A.D.2d 116, 332 N.Y.S.2d 425 (1972), the Appellate Division of the Supreme Court of New York, First Department, affirmed in part the decision of the Supreme Court, Special Term, reported in Zachary v. R.H. Macy & Co., Inc., 66 Misc.2d 974, 323 N.Y.S.2d 757 (1971). The Appellate Division held that actions brought by charge account customers challenging certain retailers' use of the "previous balance" method were not maintainable as class actions to the extent that they sought an accounting and recovery of certain finance charges imposed by the retailers. However, this intermediate appellate court, in severing and remanding the causes for individual trials, held that the terms of a New York statute did not permit the utilization of the "previous balance" method for computing finance charges. The Zachary case is currently being appealed to the New York Court of Appeals.